NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 210120-U

NO. 4-21-0120

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 16, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.R. and C.B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 19JA9 |
| v. | ) | |
| Richard R., | ) | Honorable |
| | ) | J. Brian Goldrick, |
| Respondent-Appellant). | ) | Judge Presiding. |
| | ) | |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the judgment of the trial court terminating
respondent's parental rights because the trial court's best interest finding was not
against the manifest weight of the evidence.

¶ 2         Respondent, Richard R., is the father of C.R. (born February 2018). (We note that

C.B., C.R.'s older half-sibling, is not involved in this appeal. C.B. is not respondent's biological

or adopted child, although she did live with C.R. and respondent, who was a longtime paramour

of C.B.'s mother, at the time the children were brought into care. Because respondent had no

legal relationship with C.B., he had no parental rights that could be terminated. C.B. and C.R.

continued to live together throughout the case and were adjudicated under the same McLean

County case number—19-JA-9.) In January 2021, the trial court found respondent was an unfit

parent under the Adoption Act, and later that same month, it found termination of respondent's

parental rights would be in the minor child's best interest.

¶ 3          Respondent appeals, arguing that the trial court's best-interest determination was against the manifest weight of the evidence. We disagree and affirm.

¶ 4                        I. BACKGROUND

¶ 5                        A. Procedural History

¶ 6          In February 2019, the State filed a petition for adjudication of wardship that alleged the following:

> "The minors [(C.R. and C.B.)] *** are living in an environment injurious to their welfare in that, on or about January 25, 2019, an 8 year old minor in their household died. That death was deemed by medical personnel to have been caused by non-medical blunt force trauma. Medical personnel also noted signs of chronic child abuse. *** The witnesses identified respondent mother as the primary disciplinarian. Respondent father, Richard [R.], knew of the ongoing discipline. One or more of the respondent minors were present in the home during many of those incidents. This creates a risk of harm to these minors."

¶ 7          On the same day the petition was filed, the trial court conducted a shelter care hearing and placed temporary guardianship and custody of C.R. with the guardianship administrator of the Illinois Department of Children and Family Services (DCFS).

¶ 8          In December 2019, the trial court conducted an adjudicatory hearing. Respondent stipulated to the allegations in the petition, and the court adjudicated C.R. a neglected minor.

¶ 9          In February 2020, the trial court conducted a dispositional hearing at which it entered a written order making C.R. a ward of the court based upon its finding respondent unfit and unable for reasons other than financial circumstances alone to care for, protect, train, educate, supervise, or discipline the minor. The court also concluded it would be contrary to

C.R.'s health, safety, and best interest to be in his custody. The court then placed guardianship and custody of C.R. with the guardianship administrator of DCFS.

¶ 10                              B. The Termination Proceedings

¶ 11        Also in February 2020, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was an unfit parent within the meaning of the Adoption Act due to his "[s]ubstantial neglect, if continuous and repeated, of any child residing in the household which resulted in the death of that child." 750 ILCS 50/1(D)(d-1) (West 2018).

¶ 12                              1. *Parental Fitness*

¶ 13        In January 2021, the trial court conducted a hearing on the parental fitness portion of the termination proceedings. Respondent stipulated to the allegations in the State's petition regarding his unfitness. As part of the factual basis for the stipulation, the State informed the court that, in February 2020, respondent had pleaded guilty to endangering the life or health of a child and was later sentenced to eight years in prison. The court entered a written order finding respondent unfit under section 1(D)(d-1) of the Adoption Act. 750 ILCS 50/1(D)(d-1) (West 2020).

¶ 14                              2. *Best Interests*

¶ 15        Later in January 2021, the trial court conducted a hearing on the issue of whether terminating respondent's parental rights was in C.R.'s best interest.

¶ 16        Danielle LaValley testified she was the foster mother of C.R. LaValley stated she and her husband had been the foster parents of C.R. and her older half-sister, C.B., for the past 15 months. The LaValleys had been married for fifteen years, were both employed, and adopted a son three years ago.

¶ 17        LaValley testified C.R. and C.B. called them mom and dad and were very bonded

to the LaValleys' adopted son. C.R., who was about to turn three, had never really known any other family. C.R. "wouldn't talk at all" when she first arrived. LaValley said, "Now she talks up a storm. She says her ABCs, calls us mom and dad. She loves my son to death."

¶ 18      LaValley further testified that she and her husband loved the girls and intended to adopt them if that became a possibility. LaValley believed it was in the girls' best interest to remain with them because "[t]hey adjusted well to us. They know us as their parents at this point."

¶ 19      Respondent testified he was currently in prison and had an anticipated discharge date of January 2024. Prior to his incarceration, respondent had a job at "Federal Companies" for 10 years and hoped to regain that employment upon release. Respondent always loved and cared for his daughters and believed they loved and appreciated him as a father. Respondent stated he was willing to do anything required of him to be involved in C.R.'s life in the future, which he believed would have a positive effect on her.

¶ 20      Respondent testified that he successfully completed grief counseling and parenting classes through the Center for Youth and Family Solutions. Respondent had no criminal history other than the offense for which he was imprisoned. Respondent testified that he would "continue to love and nurture [C.R.] regardless of the form of the relationship." Respondent again stated he was willing to do whatever it took to have C.R. in his life in some manner.

¶ 21                    3. *The Trial Court's Ruling*

¶ 22      The trial court found termination to be in C.R.'s best interest and terminated respondent's parental rights. The court stated it had considered all the statutory "best interest" factors (see 705 ILCS 405/1-3(4.05) (West 2018)) and discussed the ones it found particularly

relevant. The court noted that the LaValleys had been meeting C.R.'s physical and material needs for the past 15 months. Additionally, the foster parents had been there to develop C.R.'s sense of identity. The court found, "[C.R. and C.B.'s] sense of attachment, including where the children actually feel love, attachment and a sense of being valued, that sense of security, familiarity, continuity of affection and the least disruptive placement all lie with their current placement." Finally, the court believed "permanency is extremely important, especially in this situation given the history and current circumstances," and noted that C.R. had spent almost half of her life with the LaValleys.

¶ 23        This appeal followed.

¶ 24                        C. Illinois Supreme Court Rule 311(a)

¶ 25        Rule 311(a) provides, "Except for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Respondent's notice of appeal was filed in February 2021. In April 2021, this court dismissed the appeal because respondent failed to file a docketing statement. The appeal was subsequently reinstated, but this court dismissed it again in June 2021 for respondent's failure to file an appellate brief. In August 2021, this court again reinstated the case and granted respondent leave to file his brief late so this court could address respondent's claims on the merits. Accordingly, we conclude good cause exists for issuing this order after 150 days of the filing of the notice of appeal.

¶ 26                                II. ANALYSIS

¶ 27        Respondent appeals, arguing that the trial court's best-interest determination was against the manifest weight of the evidence. We disagree and affirm.

¶ 28                        A. The Applicable Law and Standard of Review

¶ 29　　　　At the best-interest stage of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71, 145 N.E.3d 605. In reaching a best-interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." (Internal quotation marks omitted.) *In re J.B.*, 2019 IL App (4th) 190537, ¶ 32, 147 N.E.3d 953.

See also 705 ILCS 405/1-3(4.05) (West 2018).

¶ 30　　　　A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility. *C.P.*, 2019 IL App (4th) 190420, ¶ 71. An appellate court "will not disturb the trial court's decision regarding a child's best interests *** unless it is against the manifest weight of the evidence." *Id.* ¶ 68. A best-interest determination is against the manifest weight of the evidence only when the opposite conclusion is clearly the proper result. *Id.*

¶ 31　　　　　　　　　　　　　B. This Case

¶ 32 Respondent argues that the trial court placed (1) too much weight on the child's sense of attachment and need for permanency and (2) too little weight on "a potential relationship with her biological father." Respondent contends that the court placed too much emphasis on factors that were outside of his control, given his restricted access while in prison. Respondent accepts responsibility for his imprisonment, but he asserts that the child's sense of attachment and continuity of affection "should receive a lesser weight in accordance with this reality."

¶ 33 We conclude the trial court's finding that termination was in C.R.'s best interest was well supported by the record. C.R. was about to turn three years old and had spent the last 15 months with the LaValleys. As noted, this comprised nearly half of C.R.'s young life. The LaValleys provided a stable, loving home for C.R. and her eight-year-old sister, permitting C.R. to maintain a strong sibling bond with C.B. C.R. did not know a life other than with the LaValleys, and she was very attached to that life, calling her foster parents "mom and dad" and spending a lot of time playing with their adopted son. The LaValleys had adopted before, had discussed adopting C.R. and C.B., and were determined to provide C.R. and C.B. permanency through adoption if the girls became available. The trial court's focus on attachment, security, affection, and permanence was entirely proper given the unique circumstances of this case and the reason why C.R. came into care.

¶ 34 III. CONCLUSION

¶ 35 For the reasons stated, we affirm the trial court's judgment.

¶ 36 Affirmed.